UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-40079
_____


In The Matter Of: LEO ROGER DUGAS,

                                    Debtor.
_____

LEO ROGER DUGAS; VALERIE DARLENE DUGAS,

                                    Appellants,

                         versus

CLARON CORPORATION; CLAMONT ENERGY CORPORATION INC, formerly
known as United States Texas Corporation Inc., formerly known
as United Texas Petroleum Inc.,

                                    Appellees.
_____

Appeal from the United States District Court
for the Eastern District of Texas
(1:95-CV-1132)
_____

March 3, 1999

Before KING, Chief Judge, and REAVLEY and BENAVIDES, Circuit
Judges.

PER CURIAM:[*]

    Debtors, Leo Roger Dugas and Valerie Darlene Dugas, appeal

from an order of the district court affirming the bankruptcy

court's denial of a disgorgement motion filed by the Dugas in

their chapter 13 bankruptcy case.  Unfortunately, neither of the

_____

    [*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

appellees have assisted this Court by filing a brief responding to the issues raised by the Dugas on appeal.  Upon consideration of the Dugas's brief and a review of the record, we reverse the district court and remand to the bankruptcy court for further proceedings.

BACKGROUND

The Dugas filed a petition for relief under chapter 13 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Eastern District of Texas, Beaumont Division, on January 10, 1994. Nineteen months later, on August 22, 1995, the Dugas commenced this adversary proceeding by filing a motion titled "Motion to Disgorge Funds into the Registry of the Court" with the bankruptcy court.  The motion alleged that one of the appellees, Claron Corporation, had improperly removed funds in which the Dugas's estate held an interest from the registry of the Harris County Civil Court at Law Number 1 in Harris County, Texas.  The Dugas also alleged that the other appellee, Clamont Energy Corporation, had failed in its responsibility to protect the funds.  The motion requested that Claron be ordered to turn over the removed funds to the Beaumont bankruptcy court and that the bankruptcy court take control over any similar funds remaining in the registry of the state court.

The funds that were the subject of the Dugas's motion were related to a well-traveled and procedurally complex interpleader action that had been filed in the Harris County court in December 1992.  Originally styled *Howell Crude Oil Co. v. JSB Petroleum,*

2

*Inc.,* Cause No. 611,156, that case involved numerous parties, including Claron and the Dugas, who claimed an ownership interest in oil and gas leases located in Chambers County, Texas. During the pendency of that action, the proceeds from those leases were being deposited into the registry of the Harris County court, awaiting the court's determination of which party owned them.

The leases that were the subject of *Howell* had originally been owned by Clamont Energy Corporation but had been transferred to other parties shortly before Clamont was forced into bankruptcy in 1989. As those transfers may have constituted avoidable preferences under 11 U.S.C. § 547, however, the Clamont bankruptcy estate still held a potential claim to the leases when *Howell* was commenced. Based upon the Clamont estate's interest, one of the *Howell* defendants removed the case in May 1993 to the U.S. Bankruptcy Court for the Southern District of Texas, Houston Division. There, it was docketed as adversary proceeding number 93-4250 under the Clamont bankruptcy case.

Despite the Clamont estate's interest in the oil and gas leases, it had never been named as party to *Howell*. Therefore, in June 1993, Jason Searcy, the trustee for the Clamont bankruptcy estate, filed a complaint in the Beaumont bankruptcy court seeking to have all of Clamont's oil and gas lease transfers canceled, and the accumulated proceeds turned over the estate. Styled *Searcy v. J.S.B. Petroleum, Inc.,* that case was also docketed under the Clamont bankruptcy case, as adversary proceeding number 93-1031S.

3

The Clamont estate's interest in *Howell* and *Searcy* was short-lived.  In December 1993, Jason Searcy entered into a settlement agreement with Claron through which Claron received all of the interest held by the Clamont estate in any of the disputed oil leases and the interplead funds.  In exchange, Claron paid the estate $18,750.  In February 1994, *Howell* was transferred to the Beaumont bankruptcy court and consolidated into *Searcy*.  One day later, the court approved the settlement agreement in *Searcy*, thereby extinguishing all of the Clamont estate's remaining interest in both cases.

Although the settlement agreement ceded all of the Clamont estate's interest in the disputed leases and funds to Claron, it did not purport to resolve what interest Claron then held vis-à-vis the Dugas or any of the other original parties in *Howell*.  In fact, because there still remained unresolved state law issues concerning the ownership over the leases and interplead funds, the Beaumont bankruptcy court, in May 1996, entered an order remanding *Searcy* to the Harris County court where *Howell* had begun four years previous.

The Dugas's disgorgement motion that is the subject of this case concerns the interplead oil and gas lease proceeds that were supposed to follow *Howell*, and then *Searcy*, as it shuffled through the string of state and federal courts.  When *Howell* was removed to the Houston bankruptcy court in May 1993, all of the interplead oil and gas lease proceeds being held by the Harris Count court, then totaling $25,866.85, were transferred from the

4

registry of the Harris County court to the registry of the Houston bankruptcy court. Those funds, supplemented by other proceeds as they arose, traveled with the case and were eventually transferred back to the registry of the Harris County court in May 1996 after the order of remand. Thus, from May 1993 when the case was removed until May 1996 when it was remanded, no more proceeds from the disputed leases should have been deposited into the registry of the Harris County court as the entire case was closed at the state level. The Harris County court's docket sheet reveals, however, that two deposits were made into its registry during that period. Both of those payments, one for $13,278.89 on June 3, 1993, and the other for $23,716.43 on August 31, 1993, were made by Statewide Crude, a company that had purchased oil under the disputed leases. Thus, a portion of the interplead funds traveled with the case in the federal bankruptcy courts while another portion improperly remained in the state court registry.

Among the evidence presented to the bankruptcy court by the Dugas were copies of a court order and a payment authorization from the Harris County court that indicate that Claron received part of the mistakenly deposited Statewide Crude funds from the Harris County court in October 1994. The order, docketed under *Howell*'s original state case number, 611,156, stated that it was "on the motion of Claron Corporation" and directed the clerk of the Harris County court to pay Claron "$23,716.43 with accrued interest, held in the registry of the Court." In describing the

5

basis for this release of funds, the order found:

> The funds held in the Registry of the County Civil Court at Law No. 1 are the property of Claron Corporation through the compromise and settlement agreement in Adversary Action under Case No. 93-4250 [the *Howell* adversary proceeding] and the subsequent Trustee's Assignment of all of Clamont Energy Corporation's interest in and to Adversary Case No. 93-4250 and any funds on deposit in the Registry of the Court in Adversary No. 93-4250 and all related cases to Claron Corporation, Assignee.

The payment authorization indicates that a check for $24,658.33, which was the $23,716.43 with accrued interest, was issued to Claron by the registry of the Harris County court on October 14, 1994.

Although it was this removal of funds that formed the basis of the Dugas's disgorgement motion, that was not apparent on its face. In the motion, the Dugas asserted that a portion of their estate "consists of an interest in case # 611,156" and described that case's removal and docketing under the Clamont adversary proceedings. Then it alleged that "Claron Corporation removed $24,658.33 . . . under adversary 93-1031." Finally, it requested that the "court order Claron Corporation to disgorge the $24,658.33 plus accrued interest back into adversary 93-1031. . . . [and] ask[ed] the court to transfer remaining funds in Harris County to the registry of the court in Tyler, Texas under adversary 93-1031." Nowhere in their motion, however, do the Dugas indicate that the funds with which they were concerned had been mistakenly deposited in the closed state proceeding.

During a short hearing, the bankruptcy court attempted to elicit a coherent description of the basis for the Dugas's

6

motion.  Although Mr. Dugas, representing himself pro se, was unsuccessful in concisely explaining his argument, he did manage to enter thirteen exhibits into evidence, including the Harris County court documents described above.  Shortly after the hearing, the court denied the motion in a one sentence order that found the Dugas had "totally failed to produce any evidence in support of the Motion."

On appeal of the bankruptcy court's order denying the disgorgement motion, the district court affirmed the bankruptcy court's ruling, but on different grounds.  It found that, even if the Dugas had a basis for their motion, it was improper for them to have filed it in their personal chapter 13 bankruptcy case.  According to the district court, the only place that the Dugas could properly have filed their disgorgement motion was in the *Searcy* adversary proceeding under which the rights associated with the settlement agreement could be litigated with notice to all interested parties.

The Dugas timely appealed the district court's decision.

DISCUSSION

In reviewing a bankruptcy court's findings of fact and conclusions of law, we apply the same standard of review as the district court.  *See Compuadd Corp. v. Texas Instruments Inc. (In re Compuadd Corp)*, 137 F.3d 880, 881 (5th Cir. 1998).  Findings of fact are reviewed for clear error and conclusions of law are reviewed de novo.  *See id.*

We discern from the district court's silence as to the

bankruptcy court's only asserted reason for denying the Dugas's disgorgement motion–that the Dugas "totally failed to produce any evidence in support of the motion"–at least a doubt, if not a rejection, of the basis for the bankruptcy court's ruling.  It is clear to us that the Dugas did present the bankruptcy court with evidence relating to Claron's removal of funds from the registry of the Harris County court.  Furthermore, based upon the facts that the case was closed at the state level when the removal occurred, and that the basis for the removal was a settlement agreement that did not purport to provide Claron with undisputed rights to the funds removed, Claron's removal of the funds was ostensibly improper.  Although it is possible that this evidence was not sufficient for the Dugas to have ultimately succeeded in forcing Claron to disgorge the funds it had received, it nonetheless did support their motion.  The bankruptcy court's finding that the Dugas failed to produce any evidence was erroneous.

Neither do we agree with the district court's conclusion that the bankruptcy court's order can be affirmed on other grounds.  Although it may well have been more efficient for the Dugas to have made their disgorgement motion in the *Howell* and *Searcy* adversary proceedings, we find, contrary to the district court's decision, that it was also permissible for the motion to have been made in their personal chapter 13 case.

Under the Bankruptcy Code's automatic stay provision, 11 U.S.C. § 362(a), Claron was prohibited from commencing,

8

continuing, or taking any action to obtain or impair any property of the Dugas's estate during the pendency of their chapter 13 case. To the extent that Claron's removal of the funds from Harris County court illegally impaired the Dugas's interest to the same funds, that removal may have constituted a violation of the § 362(a) stay provisions. Moreover, the Dugas had standing to bring an action for stay violations. *See* 11 U.S.C. § 362(h); *Pettit v. Baker*, 876 F.2d 456, 457-58 (5th Cir. 1989) (finding that § 362(h) provides a remedy for an individual injured by a willful violation of a § 362(a) stay). Thus, because the Dugas's disgorgement motion constituted an action against Claron for violating the stay, it was properly brought before the bankruptcy court in their chapter 13 case.

The district court specifically rejected the Dugas's argument on appeal that their motion was a valid claim that Claron had violated the Dugas's chapter 13 stay. First, it found that this argument was not before it as it had not been properly raised in the bankruptcy court. Second, the district court found that even if it had been raised, the Dugas's argument lacked merit because the automatic stay does not operate against proceedings in the court which has jurisdiction over the bankrupt.

We find both of the district court's reasons for rejecting the Dugas's argument unavailing. As to the first reason, we find that the Dugas did make this argument to the bankruptcy court and that the district court should have found the argument properly

9

raised.  In the Dugas's motion to the bankruptcy court, they asserted that "a portion of the debtors' estate consists of an interest in" the removed *Howell* case.  They also listed the funds that had been interplead into that case and the funds that Claron had removed.  Although the motion did not lay out with specificity the Dugas's statutory basis for seeking disgorgement of the funds removed by Claron, we find that a suit seeking relief from acts that impair the property of a bankruptcy estate is presumptively an action to enforce the automatic stay.  On that basis, the Dugas's automatic stay argument was made to the bankruptcy court and thus was properly before the district court on appeal.

We also find unconvincing the district court's second argument, that Claron was not stayed from removing the funds held by the Harris County court because § 362(a) does not stay other proceedings in the same court that has jurisdiction over the bankrupt.  While this Court has never considered whether proceedings before the court which has jurisdiction over the bankrupt are exempted from the ambit of the automatic stay, even if we were to join the courts from outside this circuit which have so held, it would not affect our decision in this case.  All of the decisions cited by the district court merely state that the stay does not operate against the *court* where the bankruptcy case is pending.  *See, e.g., Civic Center Square, Inc. v. Ford (In re Roxford Foods, Inc.),* 12 F.3d 875, 878 (9th Cir. 1993) ("'[t]he stay does not operate against the court with

10

jurisdiction over the bankrupt'" (*quoting Teerlink v. Lambert (In re Teerlink Ranch Ltd.)*, 886 F.2d 1233, 1237 (9th Cir. 1989))); *In re Redburn*, 193 B.R. 249, 260 n.17 (W.D.Mich. 1996) (citing cases for the proposition that "the creditor is not prohibited [by the automatic stay] from commencing or continuing actions in the bankruptcy court in which the bankruptcy is pending").  Here, the issue was whether the stay was violated when the Harris County court, a court unconnected to the bankruptcy court where the Dugas's case was pending, released funds to Claron.  That the state court professed to release those funds on the basis of terms in a settlement agreement approved by the same bankruptcy court with jurisdiction over the Dugas does not exempt the state court or Claron from the reaches of the stay in the Dugas's bankruptcy case.  We are moreover troubled that these funds were released to Claron given that neither the settlement agreement nor any other determination of the bankruptcy court appeared to extinguish or resolve the Dugas's claimed interest to the same funds.

We thus find that it was an error for the bankruptcy court to have failed to reach the merits of the Dugas's disgorgement motion.  We remand to the bankruptcy court for further proceedings consistent with this decision.

REVERSED and REMANDED.

11